| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:12-CR-112 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| JOSEPH MICHAELOSKI | ) | |

# **M E M O R A N D U M**

Defendant Joseph Michaelowski[1] ("Defendant") filed a motion to suppress his statement in this case (Court File No. 12). The motion was referred to United States Magistrate Judge William B. Mitchell Carter, who held a hearing and subsequently filed a Report and Recommendation ("R&R") concluding Defendant's motion should be denied (Court File No. 17). Defendant timely objected (Court File No. 19). The government did not respond to Defendant's objection. For the following reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 17). Accordingly, Defendant's motion to suppress will be **DENIED** (Court File No. 12).

## I.    RELEVANT FACTS[2]

On July 15, 2012, Agent Josh Melton ("Melton") of the Tennessee Bureau of Investigation ("TBI") was contacted by the Athens Police Department ("APD") of Athens, Tennessee. APD was seeking assistance from TBI in a child pornography investigation. A woman had contacted APD after discovering her thirteen-year-old daughter, A.G., was exchanging text messages with an adult male, and previously sent him nude pictures of herself. Using A.G.'s cell phone, Melton pretended to be A.G. and agreed to meet with the individual for sexual intercourse. They were to meet at a gas

---

[1] It appears Defendant actually spells his name "Michaelowski," however his name is misspelled in the indictment (*see* Court File No. 20, Def. Letter).

[2] The following statement of facts is largely based on the Magistrate Judge's recitation in the R&R.

station near Defendant's residence that very evening.

A number of officers, including Melton, waited near the gas station where the individual had agreed to meet A.G. The individual texted A.G.'s phone, instructing her to walk across the street. The officers drove to the Eastside Plaza, directly across the street from the gas station, and walked toward Defendant. Melton instructed Defendant three times, with his gun drawn, to lay on the ground. Defendant turned around instead, and put his hands in front of his waist. Knowing Defendant had previously been arrested for resisting arrest, Melton pinned him to the ground. Defendant was then handcuffed and allowed to stand.

After about fifteen minutes, Melton removed the handcuffs from Defendant. Melton obtained consent to search Defendant's person, cell phone, and residence. He also read a *Miranda* rights waiver form to Defendant. Defendant said he understood his rights and signed the waiver form. Defendant then gave an incriminating statement regarding his activity with A.G. He also admitted arranging to meet with her for sex.

After obtaining consent a second time to search Defendant's residence, Melton went to Defendant's house where a second resident also consented to a search. Another officer obtained a search warrant and the house was searched. While the search was ongoing, Defendant was taken to the hospital. Defendant seems to state in his objections to the R&R that his hospital visit was in regard to a head laceration he suffered in the crawlspace of his house on the day of the arrest (Court File No. 19, Obj. R&R) ("Mr. Michaeloski had a laceration to his head which required treatment . . . ."). This incident was discussed between Defendant and A.G. in texts, and Defendant had informed A.G. he felt ill and may go to the hospital. However, it appears from Defendant's statement he provided to Melton after his hospital visit, the purpose of his treatment was not his head

laceration, but was "rashes on [his] legs, head aches, nausea and burning eyes" he had suffered for approximately four days before his arrest (Court File No. 14-3, Def. Stmt, p. 3).

After officers completed the search and the hospital discharged Defendant, Melton and Defendant met at the police station at approximately 2:00 a.m. Melton advised Defendant of his *Miranda* rights once again and asked him if he felt well enough to have a conversation. After saying he did, Defendant signed another waiver form and gave a more detailed statement. Melton typed up notes he took during Defendant's statement and asked Defendant to review them. Defendant then made several changes. Melton incorporated Defendant's changes and asked him to review the statement again. Melton stated at the suppression hearing this happened multiple times. Defendant was eventually satisfied with the statement and approved it.

After Defendant was indicted, he filed the instant motion to suppress on October 16, 2012. The Court referred the motion to Magistrate Judge Carter (Court File No. 13), who held a suppression hearing on November 27, 2012. Judge Carter filed an R&R on December 6, 2012 (Court File No. 17), recommending Defendant's motion be denied. Defendant timely objected (Court File No. 19).[3]

## II.  STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court rehear

---

[3] Defendant himself submitted a letter to the court explaining he found "discrepancies" in Melton's testimony he believes need to be addressed. However, Defendant is currently represented by counsel, and all filings on his behalf must be made by his attorney of record. *See United States v. Flowers*, 428 F. App'x 526, 530 (6th Cir. 2011) (holding criminal defendants have no right to hybrid representation). *Pro se* filings will not be considered while Defendant is represented by counsel. Accordingly, the Court will not address Defendant's letter.

witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## III.    DISCUSSION

Defendant argues his statements were not given voluntarily. He also argues he did not willingly, knowingly, and voluntarily waive his *Miranda* rights. He notes he injured his head before either statement, which eventually required a trip to the hospital. He also points to the circumstances of his confrontation with police, in which their guns were drawn and they pinned him to the ground. Finally, he states his written statement was typed in Melton's words, and he eventually "gave up" trying to put them in his own words.

With respect to the voluntariness of Defendant's statement, the Court must consider the totality of the circumstances and determine whether "the conduct of law enforcement officials is such as to overbear the accused's will to resist." *United States v. Redditt*, 87 F. App'x 440, 443-44 (6th Cir. 2003) (quoting *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994)). Although conceding there is no "bright-line rule" for determining voluntariness, the Sixth Circuit has also framed the analysis according to three factors: "'(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement.'" *United States v. Rutherford*, 555 F.3d 190, 195 (6th Cir. 2009) (quoting *United States v. Mahan*, 190

F.3d 416, 422 (6th Cir. 1999)). The Court should consider "the age of the accused, his level of education and intelligence, his physical condition and emotional state at the time of the confession, his expressed fears of violent reprisals, actual physical punishment, the proximity of the coerciveness of the confession as given, and the inherent coerciveness of the confession as given." *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir.1992). Voluntariness is the government's burden to prove by a preponderance of the evidence. *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003).

The bulk of the evidence regarding the circumstances of Defendant's statements is Melton's testimony at the suppression hearing, and the Court defers to the Magistrate Judge's assessment of Melton's credibility.[4] *See Irorere*, 69 F. App'x at 236. Based on the totality of the circumstances, the Court concludes the government met its burden to establish voluntariness by a preponderance of the evidence. Defendant is a fifty-four-year-old adult, with no apparent mental limitations and with prior experience with law enforcement. He never expressed an unwillingness to proceed or a hesitancy to cooperate. He was not in any apparent distress and there is no evidence to suggest he was under the influence of any drugs (Court File No. 18, Supp. Hrg. Tr., p. 15). Although Defendant was arrested by officers with guns drawn and in a forceful takedown, his initial questioning was not performed until approximately fifteen minutes after his arrest, his handcuffs were removed, and he was allowed to smoke a cigarette. The break between Defendant's arrest and his initial questioning was sufficient, and the Court finds the officers' conduct was not coercive. *See United States v. Marrero*, 651 F.3d 453, 470 (6th Cir. 2011) (holding a statement was not

---

[4] The government also introduced four exhibits at the suppression hearing. These include the TBI warnings, the specific *Miranda* rights waiver form signed by Defendant, transcripts of text messages sent between Defendant and A.G., and Defendant's written statement.

involuntary where defendant was tased multiple times, but had an opportunity to rest, was given water, and was examined by medical personnel).

Defendant notes he suffered a head laceration a number of days before the events surrounding his arrest.[5]  However, Melton testified Defendant did not appear distressed before his initial statement. Before giving his second statement, when he returned from the hospital at 2:00 a.m., he did not appear to be confused or under the influence of drugs.  Melton asked him whether he felt physically capable of providing a statement and Defendant responded affirmatively (Court File No. 18, Supp. Hrg. Tr., pp. 21-22). Defendant's statement also states he was not under the influence of drugs or alcohol at the time it was provided (Court File No. 14-3, Def. Stmt, p. 4). Defendant carefully read his written statement and made changes on multiple iterations. Defendant's meticulous focus on the written statement's accuracy demonstrates both his cognitive ability at the time of the interrogation and his willingness to disagree with an interrogating officer, rather than simply "d[o] what he thought [the officers] wanted him to do" (Court File No. 19, Obj. R&R, p. 2).  *See United States v. Hunter*, No. 4:09-CR-19, 2009 WL 3152162, at *4 (E.D. Tenn. Sept. 28, 2009) (finding a statement voluntarily provided even considering Defendant may have incurred a head injury or used drugs prior to the interview where Defendant had rationally explained his decision to commit the crime).  Additionally, his plan to have sexual intercourse that evening suggests Defendant was not so confused or in pain he could not function.  The text message conversation that occurred between Defendant and Melton (as A.G.) included planning and demonstrated his alertness  (Supp. Hrg. Ex. D).

---

[5] There was discussion at the suppression hearing about additional abrasions that may have been caused during the takedown.  These abrasions, however, do not appear to have been serious and the Court understands Defendant's objection to refer to the pre-existing laceration.

Finally, Defendant argues Melton typed the statement and "suggest[ed] to Mr. Michaeloski what he should say by composing their interview in his, Officer Melton's words. Mr. Michaeloski suggested changes but eventually gave up and signed the statement. After all that had happened, he felt he should cooperate with whatever the officers wanted" (Court File No. 19, Obj. R&R, p. 2). However, Defendant signed the statement and apparently spent a considerable amount of time ensuring its accuracy. Melton testified Defendant read it "[m]ore carefully than [he] believe[s] [he has] ever seen anybody read on in [his] career" (Court File No. 18, Supp. Hrg. Tr., pp. 25). He apparently made several changes that "soften[ed]" the statement and specifically minimized the relationship between Defendant and A.G. (*id.*). No limit was placed on Defendant's opportunities to change the statement. Defendant does not suggest he misunderstood the statement's contents or was not allowed to revise the statement to better articulate his intended meaning. Indeed, Defendant concedes he was given the opportunity to suggest changes and his suggested changes were accepted. Considering these circumstances, the Court concludes Defendant's statement was voluntary and not coerced by law enforcement.

However, the Court's inquiry does not end there. The Fifth Amendment protects a person from being compelled to incriminate him or herself. *See, e.g.*, *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). A suspect who is in custody and subject to interrogation must be given *Miranda* warnings against self incrimination. *Miranda*, 384 U.S. at 467-68. Because of the pressures and psychological stress exerted on those in custody, officers of the law are required to adequately and effectively apprise such individuals of their rights and must fully honor their decision should they seek counsel before answering questions. *Id.* at 467. If an individual agrees to answer questions without counsel, the officer can then question the individual freely. *Davis v. United States*, 512 U.S.

452, 458 (1994). The government bears the burden of establishing a waiver by the preponderance of the evidence. *United States. v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009) (citing *United States v. Nichols*, 512 F.3d 789, 798 (6th Cir. 2008)). A "waiver of *Miranda* rights must be voluntary, that is, 'the product of a free and deliberate choice rather than intimidation, coercion or deception.'" *Id.* Such a waiver must also be "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Daoud v. Davis*, 618 F.3d 525, 529 (6th Cir. 2010) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

The voluntariness inquiry for a *Miranda* waiver is essentially the same as the test above. *Redditt*, 87 F. App'x at 445. For the same reasons the Court concluded Defendant's statement was given voluntarily, the Court also concludes his *Miranda* waiver was made voluntarily. The government still bears the burden to demonstrate the second prong of the waiver analysis; that is, that the waiver was knowing and intelligent. To establish a valid waiver, "[a]n express written or oral statement is not required." *Treesh v. Bagley*, 612 F.3d 424, 433 (6th Cir. 2010) (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). Silence alone is not sufficient, but "[w]here the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.* (citing *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2262 (2010)).

The Court finds Defendant knowingly and intelligently waived his Fifth Amendment rights. Defendant points to no evidence to suggest his waiver was not made with a full understanding of his rights. Defendant was read his rights verbatim, twice, and agreed to waive them each time by signing a waiver form. He never indicated he did not understand them and did not ask for further clarification. Defendant also has prior experience with the criminal justice system. *See Redditt*, 87

F. App'x at 445 ("Moreover, Redditt had significant experience with the criminal justice system . . . .").  He gave thorough and rational explanations of his actions and carefully considered the contents of his written statement.  This suggests not only the ability to comprehend the rights he was waiving, but also suggests he understood the weighty nature of his statement and the serious consequences giving that statement entailed.  The government has established by a preponderance of the evidence Defendant knowingly and voluntarily waived his *Miranda* rights.  Accordingly, the Court will not suppress his statements.

IV.     **CONCLUSION**

        For the foregoing reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 17).  Defendant's motions to suppress will be **DENIED** (Court File No. 12).

        **An Order Shall Enter.**


                                        **/s/**_____
                                        **CURTIS L. COLLIER**
                                        **UNITED STATES DISTRICT JUDGE**